Okey, J.
Arbitration is a method which has long existed *284 •at common law for the settlement of disputes and controversies. No particular form is required in the proceeding. Neither the arbitrators nor the witnesses are required to be ¡sworn, though the parties may stipulate that such oaths shall be administered. The submission may be revoked by either party at any time before the award is actually delivered, and the award itself has no legal effect whatever except that it furnishes foundation or cause of action or defense against the party who fails to perform or abide by the award. In England various statutory provisions on the subject are also in force.
In Ohio we have liad, for many years, statutory provisions providing for arbitration in particular cases, as in actions before a justice of the peace, and questions arising in the settlement of estates; but for half a century a statute has existed in this state, without material change (3 Curwen, 2409 ; 75 Ohio L. 738; Rev. Stat. §§ 5601-5613) which is general in its- application. Notwithstanding these various statutory provisions, it is well settled that the common-law mode of arbitration is ¡still in force in this state, where the parties have not undertaken to pursue the statute. See notes to the above sections •of the revised, statutes, and Brown v. Kincaid, Wright, 37.
To constitute an arbitration under the general statute of this ¡state, above referred to, it is not necessary that any suit between the parties should be pending, that any particular number of persons should be selected as arbitrators, that there-¡should be arbitration bonds, or that the award should be made a rule of court; but it is required that the arbitrators and witnesses shall be sworn, that the award shall be in writing signed 'by a majority of the arbitrators, and that a true copy of the award shall be delivered to each of the parties in interest.
The indictment in this case sufficiently shows that the parties endeavored to pursue the statute in holding the arbitration in question. Indeed, except that the oaths to the arbitrators and witnesses were administered by notaries public, it •does not appear that any requirement of the statute was •omitted. This view is strengthened by -the act ox 1877, 74 Ohio L. 335, § 10; Rev. Stat. § 7221, which provides that, In an indictment for perjury, or subornation of perjury, it *285 shall be sufficient to set forth the substance of the offense charged and before what court or authority the oath was taken, averring such court or authority to have full .power to administer the same, together with the proper averments to falsify the matters wherein the perjury is assigned, without setting forth any part of any record or proceeding, or the commission or authority of the court or other authority before which the perjury was committed.”
Assuming that the alleged perjury, upon which the indictment is framed, was committed in a proceeding under the general statute relating to arbitrations, the question arises whether the averments would sustain a conviction. The statute defining perjury provides that, “ Whoever, either verbally or in writing, or on oath lawfully administered, willfully and corruptly states a falsehood as to any material matter in a proceeding before any court, tribunal, or officer created by law, or in any matter in relation to which an oath is authorized by law, is guilty of perjury, and shall be imprisoned in the penitentiary not more than ten nor less than three years.” 74 Ohio L. 258, § 1; Rev. Stat. § 6897.
It will be perceived that, to be of any force, the oath must be “lawfully administered.” An oath, therefore, taken by a witness in an arbitration, must be administered by an officer authorized to do so, otherwise the witness, however false his testimony, is not punishable for perjury.
The general arbitration statute, as enacted in 1831, afieady referred to, provides that the- arbitrators and the witnesses “ shall be under oath or affirmation, to be administered to them respectively by any judge or justice of the peace of the proper county.” This provision was re-enacted in the same words in 1878 (75 Ohio L. 739, § 6), and was carried into the revised statutes in the same form, section 5606.
True, it was provided by the.act of 1852 (3 Curwen, 1752), that a notary public, within the county in which he may reside, shall have power “ to administer all oaths required or authorized to be administered in this state.” The same provision, in the same words, was carried, on the repeal of that statute, into the act of 1856 (4 Curwen, 3031), and from .the *286 latter statute it went, without change, into the revised statutes, section 118.
It will be seen that while the act of 1831, relating to arbitrations, -was in force, requiring the oaths to the arbitrators and witnesses to be administered by a judge or justice of the peace, the act of 1852, relating to. notaries public, provided, in gen-oral terms, that a notary might “ administer all oaths required or authorized to be administered in this state.” The fact that both of these acts were subsequently repealed and re-enacted, ••and finally carried into the revised statutes in the same form, has no effect upon the construction which should be placed upon the provisions in question. It is well settled that where ■■statutes have been revised, the presumption is that no change in the construction they should receive was intended, and that they will receive the same construction as before the revision, ’unless the legislative intent to the contrary is apparent. Williams v. State, 35 Ohio St. 175.
Whether the provisions of a statxite relating, to a particular subject are embraced by a subsequent statute, general in terms, is a question of construction. State v. Newton, 26 Ohio St. 200 ; Brigel v. Starbuck, 34 Ohio St. 280. The elder statute, in many cases, remains' wholly unaffected by the later act. And upon the fullest consideration we are of opinion that the power to administer oaths in a statutory arbitration is still confined to judges and justices of the peace of the county, and hence, that an oath administered by a notary public, in such •statutory proceeding, is a nullity. Indeed, the genéral power, ■of the notary to administer oaths seems to be confined to cases where it is his duty to furnish a certificate that such oath has been administered. This opinion, moreover, is strengthened by cases which hold that where the parties to an arbitration undertake to pursue the statutory mode, but fail, in any material respect, to do so, the proceeding is fatally defective. Deerfield v. Arms, 20 Pick. 180; Burghart v. Owen, 13 Gray, 302 ; Franklin Mining v. Pratt, 101 Mass. 360. And this seems to be the better opinion, though cases to the contrary may be found. This view is further strengthened by the *287 absence of all power in the notary, except when he is endeavoring to take depositions, to punish for contempt.
A majority of the court hold that the exceptions must be ■overruled. Johnson, J., who unites with White, J., and my■self in so holding, states his views in a separate opinion; and Boynton also states his views in a separate opinion. McIlvaine, O. J., is of opinion that the exceptions ought to be sustained, on the ground that while in a statutory arbitration the oaths provided for can only be administered by a judge or justice of the peace, yet that the trial in question was a common law arbitration, and that in view of the statute of this state defining perjury and the statute defining the powers of ^notaries, the indictment is sufficient.

Exceptions overruled.